CORINTH ENGINE & BOILER WORKS v. MISSISSIPPI CENTRAL RAILROAD COMPANY.

[49 South. 262.]

CARRIERS. *Shipment by other than owner. Right to hold for freight. Conditional sales.*

The owner of personal property who had conditionally sold the same, reserving title until the purchase price should be paid, is not compelled to pay freight thereon as a condition precedent to its recovery from a common carrier, although the carrier received the property from and transported it at the instance of a third person who bought it from the conditional buyer, and neither the third person nor the carrier had notice of the owner's right.

FROM the circuit court of Jefferson Davis county.

HON. ROBERT L. BULLARD, Judge.

The Corinth Engine & Boiler Works, appellant, was plaintiff

in the court below; the railroad company, appellee, was defendant there.  The suit was an action of replevin.  It was submitted to the judge, a jury being waived.  From a judgment in defendant's favor plaintiff appeared to the supreme court. The facts are stated in the opinion of the court.

*Conn & Warriner,* for appellant.

It is well settled in this state that contracts of sale in which the seller retains title to the goods until the buyer pays the full purchase price are good and valid.  In the case of *Duke v. Shackleford,* 56 Miss. 552, the court says: "But this was a sale on condition precedent; that is, there was to be no sale, properly so called, no change of title, until the full price should be paid, and the law annexes to such a sale the right in the seller to recover possession of his property upon default made, even against *bona fide* purchasers for value without notice."  Among many Mississippi cases supporting this doctrine we cite the following: *Dederick v. Wolfe,* 68 Miss. 500, 9 South. 350; *Journey v. Priestly,* 70 Miss. 586, 12 South. 799; *McPherson v. Acme Lumber Co.,* 70 Miss. 649, 12 South. 857; *Fairbanks Co. v. Graves,* 43 South. 675.

The Corinth Engine & Boiler Works did not give its consent or authority to Kirby to ship the machinery, and he shipped it without appellant's knowledge.  Appellant by retaining title to this machinery did everything necessary under the law in order to protect itself, and there is absolutely nothing in the agreed statement of facts which shows that appellant waived its rights under its retained title in favor of the railroad company or any one else.  There is no law which requires contracts of sale of this kind to be recorded, and any one who deals with a person in possession of personal property, the title to which is in a third party, or upon which a third party has a lien or claim, does so at his own risk and peril, and in a case of the kind in question it makes no difference how innocent the railroad company was.  It was the positive duty of the defendant railroad company before undertaking to ship this car load of machinery

to ascertain whether Kirby had the right to give it the railroad company's lien for freight or demurrage, or indeed a lien of any kind.

We submit to the court that the shipper, Kirby, could not possibly give to anybody a lien or claim of any kind which would be superior to and which would defeat the rights of appellant under its retained title without at least first getting the proper consent and authority.

There is nothing in the statement of facts which shows that appellant ever contemplated for one moment that Kirby would ship the machinery in question about over the country, nor did appellant give him permission to do so; it follows, therefore, that Kirby was a wrongdoer when he delivered this machinery to the railroad company and more especially was he a wrongdoer when he failed to pay the freight and to call for the goods and prevent demurrage charges.

The rule of *caveat emptor* applies to railroad companies just like it applies to everybody else, and Code 1906, § 2293, does not give to common carriers a lien for freight and demurrage on goods to which some third party, not connected with the contract of shipment, has a lien or claim. This section of the code only applies to those cases where the shipper had the right to ship and where there are no superior rights of third parties involved. There is no reason why the railroad companies cannot demand freight in advance, and, indeed, we see no good reason why a reasonable amount of money could not be demanded for demurrage, and in the event no storage charges accrue, this would of course be refunded. The law of our state compels common carriers to accept for shipment goods tendered to them only when the shipper has the right to ship, and only when the freight is paid in advance. The law most certainly does not compel carriers to transport goods on credit, nor to carry goods, where the freight has not been paid in advance, to which parties not connected with the contract of shipment have superior rights, liens or claims.

It will be impossible to make the defendant railroad com-

pany's claim for freight and demurrage superior to appellant's rights under its retained title to the machinery without violating that fundamental principle of law that no man can be divested or deprived of his personal property without his consent.

We instant that "The carrier has no lien as against the true owner who has never expressly or by implication authorized their delivery to the carrier. The carrier's lien is also inferior to the rights of the mortgagee of the property under a mortgage of which the carrier has actual or constructive knowledge." 6 Cyc. 504. *Owen v. Burlington, etc., R. Co.*, 11 S. Dak. 153, 74 Am. St. Rep. 786; *Sargent v. Usher*, 55 N. H. 287; *Gilson v. Gwinn*, 107 Mass. 126, 9 Am. Rep. 12; *Robinson v. Baker*, 5 Cush. 137, 51 Am. Dec. 54; *Saltus v. Everett*, 20 Wend. 267, 32 Am. Dec. 541; *Fitch v. Newberry*, 1 Douglass, 1, 40 Am. Dec. 33; *Savannah, etc., R. Co. v. Talbot*, 123 Ga. 378, 3 Am. & Eng. Ann. Cases, 1092.

*Jeff Truly*, for appellee.

If there was any sum due appellee, whether little or much, the verdict should have been that it retain possession. *Railroad Co. v. George*, 82 Miss. 726, 35 South. 193.

"Code 1906, § 2293 (Code 1892, § 2108), giving a carrier a lien for freight and storage, with power to sell therefor, applies to the demurrage for delay for unloading cars." Ib.

The agreed statement of facts in this case shows that the engine and boiler and sawmill outfit in question had been shipped by appellant to its vendee at Hattiesburg in May, 1906.

In November, 1907, the machinery in question was delivered to appellee at Epley, Mississippi, showing thereby that the machinery had already been moved at least once from the point to which it was originally consigned.

The railroad company at the time it received the machinery as freight for shipment did not know of appellant's title or claim and as above shown, received it at a place different from the one to which it had been first shipped and delivered to the

purchaser.  The appellee received the freight from one lawfully in possession thereof and offered to surrender the same upon payment of freight and demurrage charges.

These things are conceded:—

First: The appellant shipped the machinery to Hattiesburg.

Second: Subsequently it had been moved to Epley.

Third: The railroad company received the freight and duly transported it.

Fourth: Neither freight nor demurrage has been paid or tendered.

Fifth: There is no dispute as to the correctness or reasonableness of appellee's claim for freight and demurrage.

Sixth: The railroad company had no knowledge of appellant's title or claim to the property.

Seventh: The goods were delivered to the railroad company for shipment by "one lawfully in possession thereof."

It is this fact which distinguishes this case from all those cited in the brief for appellant.

The rule controlling in the instant case will be found clearly and concisely stated in Hutchinson's Carriers, third edition, section 885:

*Lien Exists Where Goods Received from one Clothed with Apparent Authority by Owner.*  But where on the other hand the owner of the goods has clothed another with apparent authority to deal for him with reference to the goods and the carrier receives the goods from such person it is held that he is entitled to his lien."  *Caughan v. Railroad Co.,* 13 Rhode Island, 578.

Any other rule would practically prevent the prompt and efficient handling of freight by carriers.

If this appellant can recover the machinery in question then every one holding a lien would be entitled to the same relief for, in this case, we wish to emphasize that the agreed statement of facts shows that the consignor "was lawfully in possession." It is suggested that the carrier has the right to demand pre-

payment of freight.   This would not remove the difficulty or relieve the situation.

If the carrier were to demand prepayment of freight in every instance there would still remain the possibility of demurrage or storage charges accruing after the freight reached its destination.   To avoid this difficulty counsel for appellant ingenuously says: "Indeed we see no good cause why a reasonable amount could not be demanded for demurrage and in the event no storage charges accrued this would of course be refunded."

There are at least two "good causes;" First: The law gives the carrier no such power; and, Second: It would be idle to make such demand because of the impossibility of stating in advance what would be "a reasonable amount of money" to be demanded, and, further, because the same difficulty would arise when the amount demanded had been exceeded as it very often would be.

The court will not, we trust, announce the rule that it is the duty of every carrier when goods are tendered it, as freight to be transported by one lawfully in possession, to investigate not only the records to see that there is not a record lien, but, also, to demand an abstract of title to ascertain that the consignor is the absolute owner thereof.

Yet this would be the logical inevitable result if the contention of appellant be sustained.

Whitfield, C. J., delivered the opinion of the court.

The appellant sold to one Kirby certain machinery and took installment notes for the purchase price, in which this clause occurs: "The express condition of the sale and purchase of said machinery for which this note is given is such that the title, ownership, or possession does not pass from said Corinth Engine & Boiler Works until this note, with interest, is paid in full." In other words, the notes reserved the title, ownership, and possession until payment in full.   The case was submitted to the judge upon an agreed statement of facts, after certain pre-

liminary proceedings had been had.    That agreed statement of facts is as follows:

"The Corinth Engine & Boiler Works, a Mississippi corporation, with its principal office in Corinth, in said state, sold in May, 1906, a car load of machinery to one E. O. Kirby, and said Corinth Engine & Boiler Works shipped said machinery, consisting of one engine and boiler and sawmill outfit, to said E. O. Kirby, at Hattiesburg, Miss.    The Corinth Engine & Boiler Works took from said Kirby a contract of sale, signed by the vendee, and in said contract retained title and ownership in and to all of said outfit until all of the notes given by Kirby for said machinery should be paid in full; the notes amounting in all to the sum of $1,250.    In November, 1907, one J. N. Kirby delivered said car load of machinery to the Mississippi Central Railroad Company, defendant in this suit, for shipment from Epley, Miss., to White Sand, Miss.; the same being consigned to J. N. Kirby.    That said shipment was made before all of said notes had been paid by said E. O. Kirby (Kirby had paid about $300.00), and without plaintiff's knowledge or consent, and while plaintiff still held, in accordance with its contract of sale, the title.    The Mississippi Central Railroad Company shipped the machinery from Epley to White Sand, and, the consignee, J. N. Kirby, failing to call for same, the railroad company held the machinery for freight and demurrage until it was turned over to Corinth Engine & Boiler Works, plaintiff herein, in accordance with their bond filed in this the present suit.    At the time the Mississippi Central Railroad Company received the machinery for shipment, it did not know of plaintiff's title claim, and received the freight from one lawfully in possession thereof, and offered to surrender the same upon payment of freight and demurrage charges.    The sole question to be decided being whether plaintiff can recover in this suit without paying freight and demurrage charges due the defendant. Jeff Truly, Attorney for Defendant.    Conn & Warriner, Attorneys for the Plaintiff."

The principle which must control this case is well settled, and is thus expressed in 2 Hutchinson on Carriers (3d ed.) § 884: "In this country the law upon the question does not seem to be so well settled. But few cases have occurred, it seems, in regard to the right of innkeepers, under such circumstances, to retain the property of another, brought to the inn by a guest. Whenever the subject has been referred to, it has been conceded that the lien in favor of the innkeeper attaches to the goods, even when not owned by the guest. But it has been held in several cases that a carrier acquires no right, by virtue of his employment as such, to hold the goods delivered to him by a wrongdoer, to whom they do not belong, until his charges are paid, against the claim of the true owner, and that he therefore has no lien upon them, but must, on demand, surrender them to the owner. This rule is based upon the universally recognized principle that no person's property can be taken from him without his consent, expressed or implied. It is not a harsh rule, as applied to common carriers, since they always have the right to demand of the consignor their transportation charges in advance; and the rights of a connecting road are no better in this respect than those of the initial carrier."

In the case of *Robinson v. Baker,* 59 Mass. 137, 51 Am. Dec. 54, the court said: "Thus the case stands upon direct and express authorities. How does it stand upon general principles? In the case of *Saltus v. Everett,* 20 Wend. (N. Y.) 267, 32 Am. Dec. 541, it is said: "The universal and fundamental principle of our law of personal property is that no man can be divested of his property without his consent, and consequently that even the honest purchaser under a defective title cannot hold against the true proprietor.' There is no case to be found, or any reason or analogy anywhere suggested, in the books, which would go to show that the real owner was concluded by a bill of lading not given by himself, but by some third person, erroneously or fraudulently. If the owner loses his property, or is robbed of it, or it is sold or pledged without his consent, by one who has

only a temporary right to its use, by hiring or otherwise, or a qualified possession of it for a specific purpose, as for transportation, or for work to be done upon it, the owner can follow and reclaim it in possession of any person, however innocent. Upon this settled and universal principle that no man's property can be taken from him without his consent, express or implied, the books are full of cases, many of them hard and distressing cases, where honest and innocent persons have purchased goods of others, apparently the owners, and often with strong evidence of ownership, but who yet were not the owners, and the purchasers have been obliged to surrender the goods to the true owners, though wholly without remedy for the money paid. There are other hard and distressing cases of advances made honestly and fairly by auctioneers and commission merchants upon pledge of goods by persons apparently having the right to pledge, but who in fact had not any such right, and the pledgors have been subject to the loss of them by the claim of the rightful owner. These are hazards to which persons in business are continually exposed by the operation of this universal principle that a man's property cannot be taken from him without his consent. Why should the carrier be exempt from the operation of this universal principle? Why should not the principle of *caveat emptor* apply to him? The reason, and the only reason, given is that he is obliged to receive goods to carry, and should therefore have the right to detain the goods for his pay. But he is not bound to receive goods from a wrongdoer. He is bound only to receive goods from one who may rightfully deliver them to him, and he can look to the title as well as persons in other pursuits and situations in life. Nor is a carrier bound to receive goods unless the freight or pay for the carriage is first paid to him; and he may in all cases secure the payment of the carriage in advance."

The case relied upon by the learned counsel for appellees, *Vaughn v. Providence & Worcester Railroad Company*, 13 R. I. 578, cited in note 72 to Hutchinson on Carriers, § 885, is not

in point on the facts of this case.   That case is noted in the note to *Savannah, etc., Railroad Company v. Talbot,* 3 Am. & Eng. Ann. Cas. 1092, as appearing to be an exception to the general rule.   The editor of that note says at the close of the note: "This case appears to be an exception to the general rule; but the decision was arrived at in view of the peculiar facts of the case, as the court recognized the rule under consideration." The editor further says: "The mistake was that of the initial carrier, who was the agent of the consignee."   It seems to us very clear that the *Vaughn case* was properly decided on its facts, and it was so decided, as we read the case, because the owner himself, living at Providence, directed the last carrier, the Providence & Worcester Railroad Company, which had paid to the Chicopee Railroad Company its charges, to bring the freight, the cotton, from Chicopee, Mass., to Providence, R. I.; and yet when the Providence & Worcester Railroad Company had so transported the cotton from Chicopee to Providence, the said owner, who had himself directed the transportation to Providence, refused to pay the Providence & Worcester Railroad Company its charges.   The court said in the conclusion of its opinion, at the bottom of 13 R. I. 581: "The cotton arrives at Chicopee, the place of its destination by the bill of lading which accompanied it.   The owner is informed of it, as directed by the bill of lading.   No person but the owner had any authority to send it further.   But for the owner's direction the Chicopee Railroad Company must have held it.   They knew of no other destination.   They had notice by the bill of lading that the owner had given no authority to send it to any other place.   .   .   .   They did as directed by the bill of lading— notified the owner and awaited his orders."   In other words, the court held very properly that the owner was bound to pay the Providence & Worcester Railroad Company for its charges from Chicopee to Providence for the very sufficient reason that he himself had directed the Providence Railroad Company to transport the cotton to Providence.   That case has no sort of application here.

In the case of *Savannah, etc., R. R. Co. v. Talbot,* just referred to, the court says, at page 1094: "The liability in such case is on the principle that the true owner of personal property has the right to the possession of his property, which has been fraudulently taken from him, even though it be found in the possession of an innocent purchaser; and in such cases the true owner is not liable for any expenses to which the person in possession may have been put, either in the purchase of the property or otherwise." In the note to this case the following is quoted from *Fitch v. Newberry,* 1 Doug. (Mich.) 14: "No one can transfer to another a better title than he has himself, or a greater interest in personal property than he, or the person for whom he acts, possesses. . . . To create a lien it is necessary that the party vesting it should have the power to do so. A person can neither acquire a lien by his own wrongful act, nor can he retain one, when he obtains possession of goods without the consent of the owner, express or implied." In the case of *Owen v. Burlington, etc., R. R. Co.,* 11 S. D. 153, 76 N. W. 302, 74 Am. St. Rep. 786, the court say: "Knowledge of such proposed shipment, and the fact that respondents allowed the mortgagors to remain in possession, and to move the property from place to place for use within the state, is not equivalent to consent upon their part that the lien of appellant should be paramount to this mortgage, and there is nothing in the record amounting to a waiver of their rights thereunder. By waiving its statutory right to demand and receive its charges in advance of the shipment, appellant exposed itself to the risk here encountered, and its lien cannot be regarded superior to the mortgage without violating the fundamental principle that no man can be divested of his personal property without his consent, express or implied. If the rule were as contended for by appellant, a chattel mortgage would afford but scanty security, and the common carrier would be, without an obvious distinction upon principle, relieved from a hazard to which other persons in business are constantly subjected. The doctrine upon which this decision must rest was fully recognized and applied in *Wright v. Sher-*

*man,* 3 S. D. 290, 52 N. W. 1093, 17 L. R. A. 792, a case which is amply supported by well-reasoned ancient and modern authority." To the same effect are the following authorities: *Sargent v. Usher,* 55 N. H. 287, 20 Am. Rep. 208, *Gilson v. Gwinn,* 107 Mass. 126, 9 Am. Rep. 13, and many others which need not be cited.

This is merely one of many other cases which, in our judgment, show the necessity for requiring all reservations of titles to personal property to be recorded. We trust that the legislature will pass such a law speedily.

The result is that the judgment of the court below is reversed, and a judgment will be entered here for the appellant.

*Reversed.*